**COMPREHENSIVE CASE INFORMATION SYSTEM**

Joseph E. Smith, Clerk of the Circuit Court & Comptroller

ST. LUCIE COUNTY | CCIS



Expand All

| Case Number | Filed Date | County | Case Type | Status | Contested | Jury Trial |
|---|---|---|---|---|---|---|
| 562017CA001619AXXXHC [2017CA001619] | 10/03/2017 | ST. LUCIE | | OPEN | No | No |

| Filing Date | Description | Active | Contested | Judgment Date |
|---|---|---|---|---|
| 10/03/2017 | OTHER COMPLAINT | YES | NO | - |

| Party Name | Party Type | Attorney | Bar ID |
|---|---|---|---|
| CROOM, JANET C | JUDGE | | |
| KOLLIN, GARY | ATTORNEY | | |
| NETCHER, ERIC J | ATTORNEY | | |
| AHRENS, KIPP | PLAINTIFF | KOLLIN, GARY | 282431 |
| CITY OF FT. PIERCE | DEFENDANT | NETCHER, ERIC J | 106530 |
| GUILLETT, JASON | DEFENDANT | | |
| WALKER, JOSHUA BRIAN | ATTORNEY | | |

**Dockets**

Page : 1    ALL ▼

| Image | Doc # | Action Date | Description | Pages |
|---|---|---|---|---|
| | 16 | 11/14/2017 | NOTICE OF APPEARANCE ( V ) | 2 |
| | 15 | 10/19/2017 | RETURN OF SERVICE ON SUMMONS SERVED ( V ) | 1 |
| | 14 | 10/19/2017 | DEFENDANT ATTORNEY: NETCHER, ERIC J ASSIGNED | |
| | 13 | 10/19/2017 | NOTICE OF APPEARANCE ( V ) | 2 |
| | 12 | 10/19/2017 | NOTICE OF APPEARANCE ( V ) | 2 |
| | 11 | 10/12/2017 | "RECIPIENTS: KOLLIN, GARY - SUBJECT: SERVICE OF COURT DOCUMENT – 2017CA001619, AHRENS, KIPP VS. CITY OF FT. PIERCE - ATTACHMENT COUNT: 1 - EMAIL DOCKET DESCRIPTIONS: SUMI-10/12/2017" | |
| | 10 | 10/12/2017 | SUMMONS ISSUED: GARYKOLLIN@GARYKOLLINLAW.COM ( V ) | 1 |
| | 8 | 10/10/2017 | SUMMONS TO BE ISSUED BY CLERK ( V ) | 1 |
| | 9 | 10/10/2017 | PAYMENT $10.00 RECEIPT #2017000074656 RECEIVED FOR FILING NUMBER 62601606 VIA FILINGPAYMENTS20171010235959.TXT. | |
| | 7 | 10/09/2017 | COMPLAINT AMENDED ( V ) | 16 |
| | 6 | 10/03/2017 | CIRCUIT JUDGE CROOM, JANET C: ASSIGNED | |
| | 5 | 10/03/2017 | "RECIPIENTS: - SUBJECT: SERVICE OF COURT DOCUMENT – 2017CA001619, AHRENS, KIPP VS. CITY OF FT. PIERCE - ATTACHMENT COUNT: 1 - EMAIL DOCKET DESCRIPTIONS: CCS-10/3/2017" | |
| | 4 | 10/03/2017 | COMPLAINT ( V ) | 13 |
| | 3 | 10/03/2017 | CIVIL COVER SHEET ( V ) | 2 |
| | 1 | 10/03/2017 | CASE FILED 10 03/2017 CASE NUMBER 2017CA001619 | |
| | 6 | 10/03/2017 | PAYMENT $400.00 RECEIPT #2017000072911 RECEIVED FOR FILING NUMBER 62294636 VIA FILINGPAYMENTS20171003235959.TXT. | |

**Judge Assignment History**

**Court Events**

**Financial Summary**

**Reopen History**

Filing # 62294638 E-Filed 10/03/2017 02:57:40 AM

**FORM 1.997. CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law.  This form must be filed by the plaintiff or petitioner for the use of the Clerk of Court for the purpose of reporting judicial workload data pursuant to section 25.075, Florida Statutes.  (See instructions for completion.)

I.　　**CASE STYLE**

IN THE CIRCUIT COURT OF THE <u>NINETEENTH</u>  JUDICIAL CIRCUIT,
IN AND FOR <u>ST. LUCIE</u>  COUNTY, FLORIDA

Case No.: <u>562017CA001619AXXXHC</u>
Judge: <u> Janet C Croom </u>

<u>Kipp Ahrens</u>
Plaintiff

vs.

<u>City of Ft. Pierce, Jason Guillett</u>
Defendant

II.　　**TYPE OF CASE**

- ☐ Condominium
- ☐ Contracts and indebtedness
- ☐ Eminent domain
- ☐ Auto negligence
- ☐ Negligence – other
  - ☐ Business governance
  - ☐ Business torts
  - ☐ Environmental/Toxic tort
  - ☐ Third party indemnification
  - ☐ Construction defect
  - ☐ Mass tort
  - ☐ Negligent security
  - ☐ Nursing home negligence
  - ☐ Premises liability – commercial
  - ☐ Premises liability – residential
- ☐ Products liability
- ☐ Real Property/Mortgage foreclosure
  - ☐ Commercial foreclosure $0 - $50,000
  - ☐ Commercial foreclosure $50,001 - $249,999
  - ☐ Commercial foreclosure $250,000 or more
  - ☐ Homestead residential foreclosure $0 – 50,000
  - ☐ Homestead residential foreclosure $50,001 - $249,999
  - ☐ Homestead residential foreclosure $250,000 or more
  - ☐ Non-homestead residential foreclosure $0 - $50,000
  - ☐ Non-homestead residential foreclosure $50,001 - $249,999

- ☐ Non-homestead residential foreclosure $250,00 or more
- ☐ Other real property actions $0 - $50,000
- ☐ Other real property actions $50,001 - $249,999
- ☐ Other real property actions $250,000 or more

- ☐ Professional malpractice
  - ☐ Malpractice – business
  - ☐ Malpractice – medical
  - ☐ Malpractice – other professional
- ☒ Other
  - ☐ Antitrust/Trade Regulation
  - ☐ Business Transaction
  - ☒ Circuit Civil - Not Applicable
  - ☐ Constitutional challenge-statute or ordinance
  - ☐ Constitutional challenge-proposed amendment
  - ☐ Corporate Trusts
  - ☐ Discrimination-employment or other
  - ☐ Insurance claims
  - ☐ Intellectual property
  - ☐ Libel/Slander
  - ☐ Shareholder derivative action
  - ☐ Securities litigation
  - ☐ Trade secrets
  - ☐ Trust litigation

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

III.     **REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☐ Non-monetary declaratory or injunctive relief;
☐ Punitive

IV.     **NUMBER OF CAUSES OF ACTION: (     )**
(Specify)

<u>3</u>

V.     **IS THIS CASE A CLASS ACTION LAWSUIT?**
☐ Yes
☒ No

VI.     **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
☒ No
☐ Yes – If "yes" list all related cases by name, case number and court:

VII.     **IS JURY TRIAL DEMANDED IN COMPLAINT?**
☒ Yes
☐ No

---

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature <u>s/ Gary Kollin</u>     FL Bar No.: <u>282431</u>
    Attorney or party                                                                 (Bar number, if attorney)

   <u>Gary Kollin</u>     <u>10/03/2017</u>
    (Type or print name)                                                 Date

KIPP AHRENS,

      Plaintiff,

v.

CITY OF FT. PIERCE, a Florida Municipal
Corporation, and JUSTIN GUILLETT,
individually,

      Defendant.

_____/

IN THE CIRCUIT COURT OF THE 19th
JUDICIAL CIRCUIT, IN AND FOR ST.
LUCIE COUNTY, FLORIDA

Case no.   562017CA001619AXXXHC

Janet C Croom

## COMPLAINT

    PLAINTIFF KIPP AHRENS (hereinafter "PLAINTIFF"), sues the CITY OF FT. PIERCE (hereinafter "CITY"), a Florida Municipal Corporation, and JUSTIN GUILLETT (hereinafter "GUILLETT"), individually, and says:

    1.    The matter in controversy exceeds, exclusive of interests and costs, the sum of $15,000.00.

    2.    All conditions precedent under Florida Law to the filing of this lawsuit have been satisfied.

    3.    At all times material hereto, DEFENDANT CITY OF FT. PIERCE is and was a Florida municipal corporation with principal office and place of business in St. Lucie County, Florida and *sui juris*.

    4.    DEFENDANT JUSTIN GUILLETT was, at all times relevant hereto, a police officer and agent employed by DEFENDANT CITY and *sui juris*.

    5.    PLAINTIFF is a *sui juris* and a resident of the State of Florida.

1

6.      At all times material to this Complaint, DEFENDANTS CITY and GUILLETT acted toward PLAINTIFF under color of the statutes, ordinances, customs, and usage of the State of Florida, the CITY, and the CITY Police Department.

7.      PLAINTIFF has agreed to pay his attorney a reasonable fee for the services herein.

## ALLEGATIONS OF FACT

8.      On October 9, 2013, at about 10:57 p.m., PLAINTIFF was driving a 1978 Chevrolet in the vicinity of Orange Avenue and North 11th Street in Ft. Pierce, St. Lucie County, Florida when he was stopped by DEFENDANT GUILLETT.

9.      Pursuant to Florida law, motor vehicle dealers are issued special license plates to display on vehicles that are used in connection with the dealership, being demonstrated, in transit to or from a dealer, loaned free of charge to customers, and owned by the dealer as inventory.

10.     The vehicle was in the inventory of a licensed dealership and being used in connection with the dealership. PLAINTIFF was associated with the dealership as a salesperson and operating the vehicle with permission of the dealership for sales purposes.

11.     At all times relevant to this matter, there was a "For Sale" sign displayed in the vehicle which listed the cell telephone number of PLAINTIFF.

12.     Attached to the vehicle by PLAINTIFF was a valid "Dealer" license plate of the dealership with a current valid decal. The tag was "PA184R."

13.     On September 1, 2010, and again on August 1, 2013, the Florida Department of Highway Safety and Motor Vehicles ["Department"] issued an identical letter which explained the law regarding the use of Dealer License Plates. The letters are attached as Exhibit "A."

2

14.     The letters were addressed to "All Law Enforcement Agencies" and were distributed by the Department to all law enforcement agencies on or about the time of the their issuance.

15.     The letters state as follows:

It has come to our attention that some motor vehicle dealerships have experienced law enforcement actions regarding the use of dealer license plates. We hope this letter can provide the clarification needed to solve the dilemma.

Section 320.13(1)(a), Florida Statutes state:

"Any licensed motor vehicle dealer and any licensed mobile home dealer may, upon payment of the license tax imposed by s. 320.08(12), secure one or more dealer license plates, which are valid for use on motor vehicles or mobile homes owned by the dealer to whom such plates are issued while the motor vehicles are in inventory and for sale, or while being operated in connection with such dealer's business, but are not valid for use for hire. Dealer license plates may not be used on any tow truck or wrecker unless the tow truck or wrecker is being demonstrated for sale, and the dealer license plates may not be used on a vehicle used to transport another motor vehicle for the motor vehicle dealer."

The above simply means that dealers may operate vehicles on the highways of Florida at any time as long as the vehicle is in inventory and for sale or which being operated in connection with such dealer's business. ***Dealer license plates are not registered to any one vehicle and may be used on any vehicle in the dealer's inventory***. Also, dealers are not required to take title in their name for motor vehicles held in their inventory and for sale.

Hopefully this will clear up any confusion regarding the use of dealer license plates.

(Emphasis supplied.)

16     On October 9, 2013, PLAINTIFF was stopped by DEFENDANT GUILLETT for not having a proper tag light.

17.     While on scene, DEFENDANT GUILLETT radioed dispatch requesting information on the license tag of the vehicle. Dispatch informed him that the tag was not assigned to any vehicle.

3

18.     Upon DEFENDANT GUILLETT receiving the information, PLAINTIFF was questioned regarding the tag by DEFENDANT GUILLETT. PLAINTIFF told DEFENDANT GUILLETT that he worked for a car dealership and that he placed the tag on the vehicle as allowed by law so the vehicle could be driven.

19.     PLAINTIFF informed GUILLETT that the registration document was attached to the rear of the license tag so that it would always remain with the tag regardless what vehicle the license tag was attached.

20.     PLAINTIFF endeavored to explain the law regarding dealer license tags to DEFENDANT GUILLETT who refused to listen. PLAINTIFF also requested DEFENDANT GUILLETT to obtain the registration document from the rear of the license tag so DEFENDANT GUILLETT could determine the validity of attaching the dealer tag to the vehicle.

21.     Again, DEFENDANT GUILLETT refused and would not make any effort to view the registration document attached to the rear of the tag.

22.     In fact, DEFENDANT GUILLETT lectured PLAINTIFF about Florida law prohibiting attaching an unassigned tag to a motor vehicle.

23.     DEFENDANT GUILLETT then issued Florida Uniform Traffic Citation A13D-46E to PLAINTIFF charging him with a violation of Section 320.263, Florida Statutes, which is a criminal misdemeanor violation punishable up to 60 days in jail and a fine of $500.00.

24.     Section 320.261, Florida Statutes, states as follows:

Any person who knowingly attaches to any motor vehicle ... any registration license plate, or who knowingly attaches any validation sticker ... to a registration license plate, which plate or sticker was not issued and assigned or lawfully transferred to such vehicle, is guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.

4

25.     Florida law provides that when a traffic citation is served on an individual it is equivalent to being taken into custody or arrested. An individual who receives a traffic citation is under the jurisdiction of the court and must appear at times and locations designated by the citation and the court.

26.     As a result of the criminal charge being placed against him, PLAINTIFF had to retain legal counsel to represent him and pay his counsel a legal fee and had to attend court.

27.     The criminal proceedings against PLAINTIFF were terminated in his favor on or about December 6, 2013, by entry of a *nolle prosequi* by the St. Lucie County State Attorney's Office.

28.     Upon the issuance of the criminal traffic citation, DEFENDANT GUILLETT had the vehicle towed which in turn stranded PLAINTIFF at the roadside. As a result of the towing of the vehicle, PLAINTIFF had to pay for towing and storage fees for the vehicle.

29.     CITY is responsible for the actions of DEFENDANT GUILLETT as respondeat superior.

## COUNT 1 - FALSE ARREST

30.     PLAINTIFF realleges paragraphs 1 through 29 as if fully set forth herein.

31.     Said arrest *qua* service of the uniform traffic citation was without probable cause.

32.     The actions by DEFENDANT GUILLETT in arresting PLAINTIFF without probable cause were taken in the absence of lawful authority and were undertaken by DEFENDANT GUILLETT T as a police officer, employee and agent of city.

33.     The actions of DEFENDANT GUILLETT constitute false arrest of PLAINTIFF.

34.    As a direct and proximate result of DEFENDANT GUILLETT's false arrest of PLAINTIFF, PLAINTIFF suffered grievously, was brought into public scandal with great humiliation, mental suffering, and damaged reputation.

35.    As a further direct and proximate result of DEFENDANT GUILLETT's false arrest of PLAINTIFF, PLAINTIFF incurred attorney's fees and expenses in the defense of the charges against him. As a further direct and proximate result, PLAINTIFF further suffered mental anguish and loss of his freedom.

WHEREFORE, PLAINTIFF prays in regard to the DEFENDANT CITY:

a)    Judgment for compensatory damages in excess of $15,000 Dollars;

b)    Costs of suit;

c)    Prejudgment interest;

d)    Trial by jury as to all issues so triable; and

e)    Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 2 - MALICIOUS PROSECUTION
## DEFENDANT GUILLETT INDIVIDUALLY

36.    The averments of paragraphs 1 through 29 are repeated herein.

37.    DEFENDANT GUILLETT knew or should have known that the charge he made against PLAINTIFF was false, no probable cause existed for the charge and it was taken in the absence of lawful authority.

38.    The prosecution, by DEFENDANT GUILLETT was without probable cause and was commenced and continued by DEFENDANT GUILLETT from malice towards PLAINTIFF and to

6

wrong and injure him and DEFENDANT GUILLETT well knew, or should have known, that the prosecution of PLAINTIFF was false and groundless, and without probable cause.

39.     By charging PLAINTIFF with a violation of § 320.261, Florida Statutes, DEFENDANT GUILLETT filed a false charge and instituted a false criminal action against PLAINTIFF.

40.     DEFENDANT GUILLETT delivered false information to the prosecutor in the form of police reports.

41.     As a further direct and proximate result of DEFENDANT GUILLETT's actions, PLAINTIFF incurred attorney's fees and expenses in the defense of the charges against him. As a further direct and proximate result, PLAINTIFF further suffered mental anguish and loss of his freedom.

42.     In doing the things alleged herein, DEFENDANT GUILLETT acted with actual malice and was guilty of wanton and outrageous disregard of the rights and feelings of PLAINTIFF.

WHEREFORE, PLAINTIFF prays in regard to the DEFENDANT GUILLETT:

a)     Judgment for compensatory damages in excess of fifteen thousand dollars ($15,000);

b)     Costs of suit;

c)     Prejudgment interest;

d)     Trial by jury as to all issues so triable; and

e)     Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 3 - FAILURE TO TRAIN AND SUPERVISE
## DEFENDANT CITY

43.     The averments of paragraphs 1 through 29 are repeated herein.

44.     DEFENDANT CITY owed a duty and responsibility to PLAINTIFF and the public to ensure that its police officers were properly trained in the law so that they would not make arrests for non-existent crimes nor make arrests when no crime was committed.

45.     DEFENDANT CITY owed a duty and responsibility to PLAINTIFF and the public to ensure that its police officers were properly supervised so that in the event the officer made a mistake, CITY and its police department and officers would act to rectify the mistake and mitigate any repercussions from the mistake.

46.     DEFENDANT CITY received the letters in Exhibit A at or about the dates of those letters.

47.     Through its receipts of the letters, DEFENDANT CITY was made aware of the fact that many law enforcement agencies were allowing its officers to make arrests or otherwise charge individuals for violations of law when the individuals were lawfully utilizing dealer plates.

48.     Through the receipts of the letters, DEFENDANT CITY was made aware that there was a widespread misunderstanding by law enforcement officers and law enforcement agencies throughout Florida as to the method of utilization of dealer license tags including that dealer license plates were not assigned to any one vehicle.

49.     Despite being informed by the Department of Highway Safety and Motor Vehicles of that problem which necessitated the Department to issue a statewide notice distributed to each law enforcement agency in Florida, DEFENDANT CITY negligently failed to take any action including

8

ensuring its officers understood that law and training its officers regarding the law in that regard and, in doing so, also failed to distribute the letters to its officers.

50.   DEFENDANT CITY negligently failed to undertake any action to ensure that its police officers understood the law with regard to the lawful use of dealer license tags so that its officers would not take any unlawful, illegal, incorrect and improper action against individuals including PLAINTIFF who were lawfully utilizing dealer license tags.

51.   The negligence of the DEFENDANT CITY included not providing any training materials to the officers, not providing any training instruction, not distributing the letters to the officers and not revising its directives, protocols and standard operating procedures regarding the lawful use of dealer license plates.

52.   Further, the DEFENDANT CITY negligently failed to establish a checks and balance system to ensure that its officers received proper supervision from their superiors.

53.   DEFENDANT CITY maintained a custom and practice as well as instructions in its Standard Operating Procedures, that the duties of a supervising officer in reviewing a subordinate's report was to see whether all the elements of the alleged criminal offense was stated in the report and was not to determine if there was an error in judgment or interpretation of the law by the officer.

54.   The negligent system established by the DEFENDANT CITY was that its custom and practice, directives and standard operating procedures only required the superiors and supervisors officers to review the reports of its inferiors to see if all the elements of an alleged offense was included in an offense report, but did not require the supervisors and superiors to evaluate the reports to determine if there was a mistake in judgment.

55.     As a result of the negligent failure of the DEFENDANT CITY to provide the said training and instruction, DEFENDANT GUILLETT was not made aware that PLAINTIFF had not violated the law when he attached an unassigned dealer license plate to the vehicle PLAINTIFF was driving.

56.     As a direct and proximate result of that negligent failure to train, PLAINTIFF suffered being arrested, cited with a criminal traffic violation, and having to attend court resulting in the expenditure of funds for an attorney and other expenses regarding court and mental anguish.

57.     As a direct and proximate result of the negligent failure of the DEFENDANT CITY to establish a proper supervision procedure, the error of DEFENDANT GUILLETT in arresting and citing PLAINTIFF was not discovered and identified. As a result, the prosecution of PLAINTIFF continued after his arrest and receipt of the citation until its dismissal by the State Attorney.

58.     As a result of all those negligent failures, PLAINTIFF had to expend funds for an attorney and other expenses regarding court as well as a loss of his freedom and suffered mental anguish.

WHEREFORE, PLAINTIFF prays in regard to the DEFENDANT CITY:

a)      Judgment for compensatory damages in excess of $15,000 Dollars;

b)      Costs of suit;

c)      Prejudgment interest;

d)      Trial by jury as to all issues so triable; and

e)      Such other relief as this Honorable Court may deem just and appropriate.

GARY KOLLIN, P.A.
Counsel for PLAINTIFF
1856 N. Nob Hill Road, Suite 140
Ft. Lauderdale, FL 33322
Telephone:     (954) 723-9999
Fax:               (954) 791-6565
garykollin@garykollinlaw.com
pleadings@garykollinlaw.com

By: /s/ Gary Kollin
GARY KOLLIN, ESQ.
Florida Bar No. 282431

11

**Julie L. Jones**
Executive Director

2900 Apalachee Parkway
Tallahassee, Florida 32399-0500
www.flhsmv.gov

**A SAFER**
# FLORIDA
HIGHWAY SAFETY AND MOTOR VEHICLES

**Charlie Crist**
Governor

**Bill McCollum**
Attorney General

**Alex Sink**
Chief Financial Officer

**Charles H. Bronson**
Commissioner of Agriculture

September 27, 2010

TO:        All Law Enforcement Agencies

FROM:    Carl A. Ford, Director
         Division of Motor Vehicles

SUBJECT:  Use of Dealer License Plates

      It has come to our attention that some motor vehicle dealerships have experienced law enforcement actions regarding the use of dealer license plates.  We hope this letter can provide the clarification needed to solve the dilemma.

      Section 320.13 (1) (a), Florida Statutes provides in part that any licensed motor vehicle dealer may, upon payment of the license tax imposed by s. 320.08 (12), secure one or more dealer license plates, which are valid for use on motor vehicles owned by the dealer to whom such license plates are issued while the motor vehicles are in inventory and for sale, or while being operated in connection with such dealer's business, but are not valid for use for hire. Dealer license plates may not be used on any tow truck or wrecker unless the tow truck or wrecker is being demonstrated for sale, and the dealer license plates may not be used on a vehicle used to transport another motor vehicle for the motor vehicle dealer.

      The above simply means that dealers may operate vehicles on the highways of Florida at any time for personal business so long as the vehicle is in inventory and for sale or while being operated in connection with such dealer's business.  Dealer license plates are not registered to any one vehicle and may be used on any vehicle in the dealer's inventory. Also, dealers are not required to take title in their name for motor vehicles held in their inventory and for sale.

      Hopefully this will clear up any confusion regarding the use of dealer license plates.

CAF/kh

* Service · Integrity · Courtesy · Professionalism · Innovation · Excellence ·
An Equal Opportunity Employer

 
EXHIBIT A-1

**Julie L. Jones**
Executive Director

**A SAFER**
# FLORIDA
HIGHWAY SAFETY AND MOTOR VEHICLES

**Rick Scott**
Governor

**Pam Bondi**
Attorney General

**Jeff Atwater**
Chief Financial Officer

2900 Apalachee Parkway
Tallahassee, Florida 32399-0500
www.flhsmv.gov

**Adam Putnam**
Commissioner of Agriculture

August 1, 2013

TO:         All Law Enforcement Agencies

FROM:    Clayton Boyd Walden, Director
              Division of Motorist Services

SUBJECT:    Use of Dealer License Plates

It has come to our attention that some motor vehicle dealerships have experienced law enforcement actions regarding the use of dealer license plates. We hope this letter can provide the clarification needed to solve the dilemma.

Section 320.13(1)(a), Florida Statutes states:

"Any licensed motor vehicle dealer and any licensed mobile home dealer may, upon payment of the license tax imposed by s. 320.08(12), secure one or more dealer license plates, which are valid for use on motor vehicles or mobile homes owned by the dealer to whom such license plates are issued while the motor vehicles are in inventory and for sale, or while being operated in connection with such dealer's business, but are not valid for use for hire. Dealer license plates may not be used on any tow truck or wrecker unless the tow truck or wrecker is being demonstrated for sale, and the dealer license plates may not be used on a vehicle used to transport another motor vehicle for the motor vehicle dealer."

The above simply means that dealers may operate vehicles on the highways of Florida at any time as long as the vehicle is in inventory and for sale or while being operated in connection with such dealer's business. Dealer license plates are not registered to any one vehicle and may be used on any vehicle in the dealer's inventory. Also, dealers are not required to take title in their name for motor vehicles held in their inventory and for sale.

Hopefully this will clear up any confusion regarding the use of dealer license plates.

CBW/kh

• Service • Integrity • Courtesy • Professionalism • Innovation • Excellence •
An Equal Opportunity Employer

 

EXHIBIT   A-2

KIPP AHRENS,

        PLAINTIFF,

v.

CITY OF FT. PIERCE, a Florida Municipal
Corporation, and JUSTIN GUILLETT,
individually,

        Defendants.

_____/

IN THE CIRCUIT COURT OF THE 19th
JUDICIAL CIRCUIT, IN AND FOR ST.
LUCIE COUNTY, FLORIDA

Case no. 2017CA001619

## AMENDED COMPLAINT

    PLAINTIFF KIPP AHRENS (hereinafter "PLAINTIFF"), sues the CITY OF FT. PIERCE (hereinafter "CITY"), a Florida Municipal Corporation, and JUSTIN GUILLETT (hereinafter "GUILLETT"), individually, and says:

    1.    The matter in controversy exceeds, exclusive of interests and costs, the sum of $15,000.00.

    2.    All conditions precedent under Florida Law to the filing of this lawsuit have been satisfied.

    3.    At all times material hereto, DEFENDANT CITY OF FT. PIERCE is and was a Florida municipal corporation with principal office and place of business in St. Lucie County, Florida and *sui juris*.

    4.    DEFENDANT JUSTIN GUILLETT was, at all times relevant hereto, a police officer and agent employed by DEFENDANT CITY and *sui juris*.

    5.    PLAINTIFF is *sui juris* and a resident of the State of Florida.

1

6.      At all times material to this Complaint, DEFENDANTS CITY and GUILLETT acted toward PLAINTIFF under color of the statutes, ordinances, customs, and usage of the State of Florida, the CITY, and the CITY Police Department.

7.      PLAINTIFF has agreed to pay his attorney a reasonable fee for the services herein.

## ALLEGATIONS OF FACT

8.      On October 9, 2013, at about 10:57 p.m., PLAINTIFF was driving a 1978 Chevrolet in the vicinity of Orange Avenue and North 11th Street in Ft. Pierce, St. Lucie County, Florida when he was stopped by DEFENDANT GUILLETT.

9.      Pursuant to Florida law, motor vehicle dealers are issued special license plates to display on vehicles that are used in connection with the dealership, being demonstrated, in transit to or from a dealer, loaned free of charge to customers, and owned by the dealer as inventory.

10.      The car was in the inventory of a licensed dealership and being used in connection with the dealership. PLAINTIFF was associated with the dealership as a salesperson and operating the car with permission of the dealership for sales purposes.

11.      At all times relevant to this matter, there was a "For Sale" sign displayed in the car which displayed the cell telephone number of PLAINTIFF.

12.      Attached to the car by PLAINTIFF was a valid "Dealer" license plate of the dealership with a current valid decal. The tag was "PA184R."

13.      On September 1, 2010, and again on August 1, 2013, the Florida Department of Highway Safety and Motor Vehicles ["Department"] issued an identical letter which explained the law regarding the use of Dealer License Plates. The letters are attached as Exhibit "A."

2

14.     The letters were addressed to "All Law Enforcement Agencies" and were distributed by the Department to all law enforcement agencies on or about the time of the their issuance.

15.     The letters state as follows:

It has come to our attention that some motor vehicle dealerships have experienced law enforcement actions regarding the use of dealer license plates. We hope this letter can provide the clarification needed to solve the dilemma.

Section 320.13(1)(a), Florida Statutes state:

"Any licensed motor vehicle dealer and any licensed mobile home dealer may, upon payment of the license tax imposed by s. 320.08(12), secure one or more dealer license plates, which are valid for use on motor vehicles or mobile homes owned by the dealer to whom such plates are issued while the motor vehicles are in inventory and for sale, or while being operated in connection with such dealer's business, but are not valid for use for hire. Dealer license plates may not be used on any tow truck or wrecker unless the tow truck or wrecker is being demonstrated for sale, and the dealer license plates may not be used on a vehicle used to transport another motor vehicle for the motor vehicle dealer."

The above simply means that dealers may operate vehicles on the highways of Florida at any time as long as the vehicle is in inventory and for sale or which being operated in connection with such dealer's business. ***Dealer license plates are not registered to any one vehicle and may be used on any vehicle in the dealer's inventory***. Also, dealers are not required to take title in their name for motor vehicles held in their inventory and for sale.

Hopefully this will clear up any confusion regarding the use of dealer license plates.

(Emphasis supplied.)

16      On October 9, 2013, PLAINTIFF was stopped by DEFENDANT GUILLETT for not having a proper tag light. No citation nor warning was issued.

17.     While on scene, DEFENDANT GUILLETT radioed dispatch requesting information on the license tag on PLAINTIFF's car. Dispatch informed him that the tag was not assigned to any particular vehicle.

3

18. Upon DEFENDANT GUILLETT receiving the information, PLAINTIFF was questioned by DEFENDANT GUILLETT regarding the tag. PLAINTIFF told DEFENDANT GUILLETT that he worked for a car dealership and that he placed the tag on the car as allowed by law so the car could be driven.

19. PLAINTIFF informed DEFENDANT GUILLETT that the registration document was attached to the rear of the license tag so that it would always remain with the tag regardless to what vehicle the license tag was attached.

20. PLAINTIFF endeavored to explain the law regarding dealer license tags to DEFENDANT GUILLETT who refused to listen. PLAINTIFF also requested DEFENDANT GUILLETT to obtain the registration document from the rear of the license tag so DEFENDANT GUILLETT could determine the validity of attaching the dealer tag to the car.

21. Again, DEFENDANT GUILLETT refused and would not make any effort to view the registration document attached to the rear of the tag.

22. In fact, DEFENDANT GUILLETT lectured PLAINTIFF about Florida law prohibiting attaching an unassigned tag to a motor vehicle.

23. During the course of these events DEFENDANT GUILLETT took PLAINTIFF into custody, handcuffed PLAINTIFF and placed PLAINTIFF into the rear cage area of his police vehicle. This action was done without any lawful basis and without reasonable suspicion or probable cause that PLAINTIFF committed a violation of the law. These actions occurred without the consent of PLAINTIFF.

24. As a result of PLAINTIFF being handcuffed and held in DEFENDANT GUILLETT's vehicle, PLAINTIFF's car was in the care, custody and control of DEFENDANT GUILLETT.

4

25.    While PLAINTIFF was detained in DEFENDANT GUILLETT's vehicle, PLAINTIFF's car was searched by DEFENDANT GUILLETT and by numerous unknown named police officers who arrived at the location of the stop, and the search of PLAINTIFF's car was at the direction, control and approval of DEFENDANT GUILLETT.

26.    This search was conducted without any lawful basis and without reasonable suspicion or probable cause. The search was conducted without the consent of PLAINTIFF.

27.    DEFENDANT GUILLETT removed PLAINTIFF from DEFENDANT GUILLETT's vehicle and unhandcuffed him.

28.    DEFENDANT GUILLETT issued Florida Uniform Traffic Citation A13D-46E to PLAINTIFF charging him with a violation of Section 320.261, Florida Statutes, which is a criminal misdemeanor violation punishable up to 60 days in jail and a fine of $500.00. This action was done without any lawful basis and without reasonable suspicion or probable cause that PLAINTIFF committed a violation of the law.

29.    Section 320.261, Florida Statutes, states as follows:

> Any person who knowingly attaches to any motor vehicle ... any registration license plate, or who knowingly attaches any validation sticker ... to a registration license plate, which plate or sticker was not issued and assigned or lawfully transferred to such vehicle, is guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.

30.    Florida law provides that when a traffic citation is served on an individual it is equivalent to being taken into custody or arrested. An individual who receives a traffic citation is under the jurisdiction of the court and must appear at all times and locations designated by the citation and the court.

5

31.     DEFENDANT GUILLETT seized the license plate of PLAINTIFF's car and placed into evidence at the police department. This action was done without PLAINTIFF's consent and without any lawful basis and without reasonable suspicion or probable cause that PLAINTIFF committed a violation of the law and without any lawful basis that anything was unlawful about the plate.

32.     As a result of the criminal charge being placed against him, PLAINTIFF had to retain legal counsel to represent him and pay his counsel a legal fee and had to attend court.

33.     The criminal proceedings against PLAINTIFF were terminated in his favor on or about December 6, 2013, by entry of a *nolle prosequi* by the St. Lucie County State Attorney's Office.

34.     CITY is responsible for the actions of DEFENDANT GUILLETT as respondeat superior.

## COUNT 1 - FALSE ARREST AGAINST CITY

35.     PLAINTIFF realleges paragraphs 1 through 34 as if fully set forth herein.

36.     Said handcuffing and detention was done without a lawful basis and without reasonable suspicion nor probable cause.

37.     Said arrest *qua* service of the uniform traffic citation was without probable cause.

38.     The actions by DEFENDANT GUILLETT in arresting , handcuffing and detaining PLAINTIFF without probable cause were taken in the absence of lawful authority and were undertaken by DEFENDANT GUILLETT as a police officer, employee and agent of city.

39.     The actions of DEFENDANT GUILLETT constitute false arrest of PLAINTIFF.

6

40.     As a direct and proximate result of DEFENDANT GUILLETT's false arrest of PLAINTIFF, PLAINTIFF suffered grievously, was brought into public scandal with great humiliation, mental suffering, and damaged reputation.

41.     As a further direct and proximate result of DEFENDANT GUILLETT's false arrest of PLAINTIFF, PLAINTIFF incurred attorney's fees and expenses in the defense of the charge against him. As a further direct and proximate result, PLAINTIFF suffered mental anguish and loss of his freedom.

WHEREFORE, PLAINTIFF prays in regard to the DEFENDANT CITY:

a)      Judgment for compensatory damages in excess of $15,000 Dollars;

b)      Costs of suit;

c)      Prejudgment interest;

d)      Trial by jury as to all issues so triable; and

e)      Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 2 – MALICIOUS PROSECUTION
## DEFENDANT GUILLETT INDIVIDUALLY

42.     The averments of paragraphs 1 through 34 are repeated herein.

43.     DEFENDANT GUILLETT knew or should have known that the charge he made against PLAINTIFF was false, no probable cause existed for the charge and it was taken in the absence of lawful authority.

44.     The prosecution by DEFENDANT GUILLETT was without probable cause and was commenced and continued by DEFENDANT GUILLETT from malice towards PLAINTIFF and to

7

wrong and injure him and DEFENDANT GUILLETT well knew, or should have known, that the prosecution of PLAINTIFF was false and groundless, and without probable cause.

45. By charging PLAINTIFF with a violation of § 320.261, Florida Statutes, DEFENDANT GUILLETT filed a false charge and instituted a false criminal action against PLAINTIFF.

46. DEFENDANT GUILLETT delivered false information to the prosecutor in the form of police reports and other ways.

47. As a further direct and proximate result of DEFENDANT GUILLETT's actions, PLAINTIFF incurred attorney's fees and expenses in the defense of the charges against him. As a further direct and proximate result, PLAINTIFF suffered mental anguish and loss of his freedom.

48. In doing the things alleged herein, DEFENDANT GUILLETT acted with actual malice and was guilty of wanton and outrageous disregard of the rights and feelings of PLAINTIFF.

WHEREFORE, PLAINTIFF prays in regard to the DEFENDANT GUILLETT:

a) Judgment for compensatory damages in excess of fifteen thousand dollars ($15,000);

b) Costs of suit;

c) Prejudgment interest;

d) Trial by jury as to all issues so triable; and

e) Such other relief as this Honorable Court may deem just and appropriate.

8

## COUNT 3 - 42 U.S.C. § 1983 VIOLATION OF CIVIL RIGHTS CLAIM (FOURTH AMENDMENT) OF PLAINTIFF AGAINST DEFENDANT GUILLETT

For his cause of action against DEFENDANT GUILLETT in Count 3, PLAINTIFF states:

49.     PLAINTIFF realleges and adopts, as if fully set forth in Count 3, the allegations of paragraphs 1 through 34.

50.     DEFENDANT GUILLETT proximately caused PLAINTIFF's' arrest in the absence of probable cause that PLAINTIFF committed any criminal offense and in violation of his clearly established rights under the Fourth Amendment and 42 U.S.C. § 1983.

51.     At all times material, DEFENDANT GUILLETT acted under the color of the statutes, customs, ordinances and usage of the State of Florida in the course and scope of employment as a police officer of DEFENDANT CITY.

52.     As a further direct and proximate result of the conduct of DEFENDANT GUILLETT, PLAINTIFF suffered loss of his liberty and freedom, great humiliation, mental suffering, mental anguish, loss of income, attorney expenses, costs of defense, and loss of capacity for the enjoyment of life. PLAINTIFF's losses are either permanent or continuing and PLAINTIFF will suffer the losses in the future, in violation of PLAINTIFF's civil rights.

WHEREFORE, PLAINTIFF prays:

a)     Judgment for compensatory damages in excess of $ 15,000 dollars against DEFENDANT GUILLETT;

b)     Cost of suit;

c)     Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

d)     Prejudgment interest;

e)     Trial by jury as to all issues so triable; and

f)     Such other relief as this Honorable Court may deem just and appropriate.

9

## COUNT 4 - VIOLATION OF 42 U. S. C. § 1983:
## UNLAWFUL SEARCH AND SEIZURE BY DEFENDANT GUILLETT

53.     PLAINTIFF repeats, realleges, and incorporates by reference the allegations in paragraphs 1 through 34 above with the same force and effect as if herein set forth.

54.     As a consequence of the actions of DEFENDANT GUILLETT, PLAINTIFF's car was unlawfully entered and searched without PLAINTIFF's consent.

55.     As a result of the said entry and search, PLAINTIFF was deprived of the full and uninterrupted use and enjoyment of his car without interference.

56.     PLAINTIFF is entitled to relief against DEFENDANT GUILLETT, in that, he participated with the unknown named officers in entering and searching PLAINTIFF's car.

57.     As a consequence of the actions of DEFENDANT GUILLETT, the dealer tag from PLAINTIFF's car was unlawfully seized by DEFENDANT GUILLETT without PLAINTIFF's consent.

58.     As a result of the said seizure, PLAINTIFF was deprived of the full and uninterrupted use and enjoyment of his car and tag without interference.

59.     While DEFENDANT GUILLETT was acting under the authority of the State of Florida and the United States and under color of law as a law enforcement officer in the employ of CITY, he subjected PLAINTIFF to the deprivation of the rights and privileges secured to him by the Constitution of the United States including the constitutional rights not to have his property unlawfully searched and seized under the Fourth Amendment within the meaning of 42 U.S.C. § 1983.

60.     With regard to the violation of the constitutional rights of PLAINTIFF as alleged in this count, the actions of DEFENDANT GUILLETT were done with malicious intent, ill will, spite,

10

intent to injure, evil motive, wickedness, formed design to injure or oppress PLAINTIFF and were done with a reckless or callous indifference to the federally protected rights of PLAINTIFF .

61.     PLAINTIFF suffered emotional distress, mental anguish and loss of capacity for the enjoyment of life and loss of freedom and civil rights.

62.     As a result, PLAINTIFF was deprived of his right to be free from unlawful searches and seizures, in violation of the Fourth Amendment to the Constitution of the United States.

63.     The acts of DEFENDANT GUILLETT were willful, wanton, malicious, and oppressive.

WHEREFORE, PLAINTIFF prays in regard to DEFENDANT GUILLETT:

a)     Judgment for compensatory damages in excess of $ 15,000 dollars;

b)     Cost of suit;

c)     Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

d)     Trial by jury as to all issues so triable; and

e)     Such other relief as this Honorable Court may deem just and appropriate.

### COUNT 5 - FAILURE TO TRAIN AND SUPERVISE
### DEFENDANT CITY

64.     PLAINTIFF repeats, realleges, and incorporates by reference the allegations in paragraphs 1 through 34 above with the same force and effect as if herein set forth.

65.     DEFENDANT CITY owed a duty and responsibility to PLAINTIFF and the public to ensure that its police officers were properly trained in the law so that they would not make arrests for non-existent crimes, nor make arrests when no crime was committed, nor conduct unlawful searches and seizures.

66.     DEFENDANT CITY owed a duty and responsibility to PLAINTIFF and the public to ensure that its police officers were properly supervised so that in the event the officer made a

mistake, CITY and its police department and officers would act to rectify the mistake and mitigate any repercussions from the mistake.

67.  DEFENDANT CITY received the letters in Exhibit A at or about the dates of those letters.

68.  Through its receipts of the letters, DEFENDANT CITY was made aware of the fact that many law enforcement agencies were allowing its officers to make arrests or otherwise charge individuals for violations of law when the individuals were lawfully utilizing dealer plates.

69.  Through the receipts of the letters, DEFENDANT CITY was made aware that there was a widespread misunderstanding by law enforcement officers and law enforcement agencies throughout Florida as to the method of utilization of dealer license tags including that dealer license plates were not assigned to any one vehicle.

70.  Despite being informed by the Department of Highway Safety and Motor Vehicles of that problem which necessitated the Department to twice issue a statewide notice distributed to each law enforcement agency in Florida, DEFENDANT CITY negligently failed to take any action including ensuring its officers understood the law and by training its officers regarding the law in that regard and, in doing so, also failed to distribute the letters to its officers.

71.  DEFENDANT CITY negligently failed to undertake any action to ensure that its police officers understood the law with regard to the lawful use of dealer license tags so that its officers would not take any unlawful, illegal, incorrect and improper action against individuals including PLAINTIFF who were lawfully utilizing dealer license tags.

72.  The negligence of the DEFENDANT CITY included not providing any training materials to the officers, not providing any training instruction, not distributing the letters to the officers and not revising its directives, protocols and standard operating procedures regarding the lawful use of dealer license plates.

12

73.     Further, the DEFENDANT CITY negligently failed to establish a checks and balance system to ensure that its officers received proper supervision from their superiors.

74.     DEFENDANT CITY maintained a custom and practice as well as instructions in its Standard Operating Procedures, that the duties of a supervising officer in reviewing a subordinate's report was to see whether all the elements of the alleged criminal offense was stated in the report and was not to determine if there was an error in judgment or interpretation of the law by the officer.

75.     The negligent system established by the DEFENDANT CITY was that its customs practices, directives and standard operating procedures only required the superiors and supervisors officers to review the reports of its inferiors to see if all the elements of an alleged offense was included in an offense report, but did not require the supervisors and superiors to evaluate the reports to determine if there was a mistake in judgment or interpretation of the law by the officer.

76.     As a result of the negligent failure of the DEFENDANT CITY to provide the said training and instruction, DEFENDANT GUILLETT was not made aware that PLAINTIFF had not violated the law when he attached an unassigned dealer license plate to the car PLAINTIFF was driving.

77.     As a direct and proximate result of that negligent failure to train, PLAINTIFF suffered being arrested, cited with a criminal traffic violation, and having to attend court resulting in the expenditure of funds for an attorney and other expenses regarding court and mental anguish.

78.     As a direct and proximate result of the negligent failure of the DEFENDANT CITY to establish a proper supervision procedure, the error of DEFENDANT GUILLETT in arresting and citing PLAINTIFF was not discovered and identified. As a result, the prosecution of PLAINTIFF continued after his arrest and receipt of the citation until its dismissal by the State Attorney.

13

79.   As a result of all those negligent failures, PLAINTIFF had to expend funds for an attorney and other expenses regarding court as well as a loss of his freedom and suffered mental anguish.

WHEREFORE, PLAINTIFF prays in regard to the DEFENDANT CITY:

a)   Judgment for compensatory damages in excess of $15,000 Dollars;

b)   Costs of suit;

c)   Prejudgment interest;

d)   Trial by jury as to all issues so triable; and

e)   Such other relief as this Honorable Court may deem just and appropriate.

GARY KOLLIN, P.A.
Counsel for PLAINTIFF
1856 N. Nob Hill Road, Suite 140
Ft. Lauderdale, FL 33322
Telephone:   (954) 723-9999
Fax:            (954) 791-6565
garykollin@garykollinlaw.com
pleadings@garykollinlaw.com

By: /s/ Gary Kollin
GARY KOLLIN, ESQ.
Florida Bar No. 282431

14

Julie L. Jones
Executive Director

Charlie Crist
Governor

Bill McCollum
Attorney General

Alex Sink
Chief Financial Officer

Charles H. Bronson
Commissioner of Agriculture

A SAFER

# FLORIDA

HIGHWAY SAFETY AND MOTOR VEHICLES

2900 Apalachee Parkway
Tallahassee, Florida 32399-0500
www.flhsmv.gov

September 27, 2010

TO:        All Law Enforcement Agencies

FROM:      Carl A. Ford, Director
           Division of Motor Vehicles

SUBJECT:   Use of Dealer License Plates

It has come to our attention that some motor vehicle dealerships have experienced law enforcement actions regarding the use of dealer license plates.   We hope this letter can provide the clarification needed to solve the dilemma.

Section 320.13 (1) (a), Florida Statutes provides in part that any licensed motor vehicle dealer may, upon payment of the license tax imposed by s. 320.08 (12), secure one or more dealer license plates, which are valid for use on motor vehicles owned by the dealer to whom such license plates are issued while the motor vehicles are in inventory and for sale, or while being operated in connection with such dealer's business, but are not valid for use for hire. Dealer license plates may not be used on any tow truck or wrecker unless the tow truck or wrecker is being demonstrated for sale, and the dealer license plates may not be used on a vehicle used to transport another motor vehicle for the motor vehicle dealer.

The above simply means that dealers may operate vehicles on the highways of Florida at any time for personal business so long as the vehicle is in inventory and for sale or while being operated in connection with such dealer's business. Dealer license plates are not registered to any one vehicle and may be used on any vehicle in the dealer's inventory. Also, dealers are not required to take title in their name for motor vehicles held in their inventory and for sale.

Hopefully this will clear up any confusion regarding the use of dealer license plates.

CAF/kh

* Service * Integrity * Courtesy * Professionalism * Innovation * Excellence *
An Equal Opportunity Employer



EXHIBIT A-1

Julie L. Jones
Executive Director

**A SAFER**
**FLORIDA**
HIGHWAY SAFETY AND MOTOR VEHICLES

2900 Apalachee Parkway
Tallahassee, Florida 32399-0500
www.flhsmv.gov

Rick Scott
Governor

Pam Bondi
Attorney General

Jeff Atwater
Chief Financial Officer

Adam Putnam
Commissioner of Agriculture

August 1, 2013

TO:         All Law Enforcement Agencies

FROM:     Clayton Boyd Walden, Director
          Division of Motorist Services

SUBJECT:   Use of Dealer License Plates

It has come to our attention that some motor vehicle dealerships have experienced law enforcement actions regarding the use of dealer license plates. We hope this letter can provide the clarification needed to solve the dilemma.

Section 320.13(1)(a), Florida Statutes states:

"Any licensed motor vehicle dealer and any licensed mobile home dealer may, upon payment of the license tax imposed by s. 320.08(12), secure one or more dealer license plates, which are valid for use on motor vehicles or mobile homes owned by the dealer to whom such license plates are issued while the motor vehicles are in inventory and for sale, or while being operated in connection with such dealer's business, but are not valid for use for hire. Dealer license plates may not be used on any tow truck or wrecker unless the tow truck or wrecker is being demonstrated for sale, and the dealer license plates may not be used on a vehicle used to transport another motor vehicle for the motor vehicle dealer."

The above simply means that dealers may operate vehicles on the highways of Florida at any time as long as the vehicle is in inventory and for sale or while being operated in connection with such dealer's business. Dealer license plates are not registered to any one vehicle and may be used on any vehicle in the dealer's inventory. Also, dealers are not required to take title in their name for motor vehicles held in their inventory and for sale.

Hopefully this will clear up any confusion regarding the use of dealer license plates.

CBW/kh

 

EXHIBIT A-2

Filing # 62601606 E-Filed 10/10/2017 01:35:26 AM

KIPP AHRENS,

      PLAINTIFF,

v.

CITY OF FT. PIERCE, a Florida Municipal
Corporation, and JUSTIN GUILLETT,
individually,

      Defendants.

_____/

IN THE CIRCUIT COURT OF THE 19th
JUDICIAL CIRCUIT, IN AND FOR ST.
LUCIE COUNTY, FLORIDA

Case no. 2017CA001619

**THE STATE OF FLORIDA:**

**TO EACH SHERIFF OF THE STATE:**

      YOU ARE COMMANDED to serve this summons and a copy of the Complaint and Request for Production, in this action on defendant, **CITY OF FT. PIERCE, by serving:**

      **Mayor Linda Hudson or other designated person authorized to accept service**
      **City Hall**
      **100 N. US 1**
      **Ft. Pierce, FL 34950**

      Each defendant is required to serve written defenses to the complaint, on plaintiff or his attorney, whose name and address is Gary Kollin, P.A. Attorney at Law, 1856 N. Nob Hill Road. Suite 140, Ft. Lauderdale, FL 33322, within 40 days [Rule 1.140(a)(2)(A)] after service of this summons on the defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on defendant or plaintiff's attorney or immediately thereafter. If defendant fails to do so, a default will be entered against defendant for the relief demanded in the complaint or petition.

      DATED on _____

                             JOSEPH E. SMITH
                             Clerk of the Court

(COURT SEAL)                      BY _____
                             Deputy Clerk

GARY KOLLIN, P.A.
Counsel for PLAINTIFF
1856 N. Nob Hill Road. Suite 140
Ft. Lauderdale, FL 33322
Telephone:    (954) 723-9999
Fax:          (954) 791-6565
garykollin@garykollinlaw.com
pleadings@garykollinlaw.com

Filing # 62601606 E-Filed 10/10/2017 01:35:26 AM

KIPP AHRENS,

      PLAINTIFF,

v.

CITY OF FT. PIERCE, a Florida Municipal
Corporation, and JUSTIN GUILLETT,
individually,

      Defendants.

_____/

IN THE CIRCUIT COURT OF THE 19th
JUDICIAL CIRCUIT, IN AND FOR ST.
LUCIE COUNTY, FLORIDA

Case no. 2017CA001619
    Janet C Croom

**THE STATE OF FLORIDA:**

**TO EACH SHERIFF OF THE STATE:**

    YOU ARE COMMANDED to serve this summons and a copy of the Complaint and Request for Production, in this action on defendant, **CITY OF FT. PIERCE, by serving:**

    **Mayor Linda Hudson or other designated person authorized to accept service**
    **City Hall**
    **100 N. US 1**
    **Ft. Pierce, FL 34950**

    Each defendant is required to serve written defenses to the complaint, on plaintiff or his attorney, whose name and address is Gary Kollin, P.A. Attorney at Law, 1856 N. Nob Hill Road. Suite 140, Ft. Lauderdale, FL 33322, within 40 days [Rule 1.140(a)(2)(A)] after service of this summons on the defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on defendant or plaintiff's attorney or immediately thereafter. If defendant fails to do so, a default will be entered against defendant for the relief demanded in the complaint or petition.

        DATED on    *10/12/2017*
                   _____

                               JOSEPH E. SMITH
                               Clerk of the Court

                               *Obria Dandridge*

(COURT SEAL)
                               BY _____
                               Deputy Clerk

GARY KOLLIN, P.A.
Counsel for PLAINTIFF
1856 N. Nob Hill Road. Suite 140
Ft. Lauderdale, FL 33322
Telephone:    (954) 723-9999
Fax:          (954) 791-6565
garykollin@garykollinlaw.com
pleadings@garykollinlaw.com

Filing # 63065082 E-Filed 10/19/2017 02:53:51 PM

**IN THE CIRCUIT COURT OF THE**
**NINETEENTH JUDICIAL CIRCUIT IN AND FOR**
**ST. LUCIE COUNTY, FLORIDA**

**KIPP AHRENS,**                                    **CASE NO:  2017-CA-001619**

      **Plaintiff,**

**vs.**

**CITY OF FT. PIERCE, a Florida**
**Municipal Corporation, and**
**JUSTIN GUILLET, individually,**

      **Defendants.**
_____/

**NOTICE OF APPEARANCE AND**
**DESIGNATION OF ELECTRONIC MAIL ADDRESSES**

    Joshua B. Walker, Esquire, of the law firm Dean, Ringers, Morgan & Lawton, P.A., Post

Office Box 2928, Orlando, FL 32802-2928, hereby files this Notice of Appearance on behalf of

Defendant CITY OF FORT PIERCE without waiving and specifically reserving any rights it

may have to object to the sufficiency of process, service of process, proper venue or the

jurisdiction of this court, and requests that all pleadings, notices, and other papers filed in this

proceeding be served upon the undersigned attorneys.

    In compliance with Fla. R. Jud. Admin. 2.516, the undersigned designates the following

primary and secondary electronic mail addresses for this matter:

        Primary Electronic Mail Address:                 Joshua B. Walker
                                                   JWalker@drml-law.com

        Secondary Electronic Mail Addresses:       Danene Velleu
                                                   Danene@drml-law.com

                                                   Katie Rutledge
                                                   Katie@drml-law.com

**I HEREBY CERTIFY** that on October 19, 2017, the foregoing was filed through the Florida Courts E-Filing Portal which will send a notice of electronic filing to Gary Kollin, Esq., Gary Kollin, P.A., garykollin@garykollinlaw.com; pleadings@garykollinlaw.com, 1856 N. Nob Hill Road, Suite 140, Fort Lauderdale, FL 33322.

_____/s/ Joshua B. Walker_____
JOSHUA B. WALKER, ESQ.
Florida Bar No. 0047614
Dean, Ringers, Morgan & Lawton, P.A.
Post Office Box 2928
Orlando, Florida 32802-2928
Tel:  407-422-4310    Fax:  407-648-0233
JWalker@drml-law.com
Danene@drml-law.com
Katie@drml-law.com
Attorneys for Defendant City of Fort Pierce

Filing # 63065662 E-Filed 10/19/2017 02:59:04 PM

IN THE CIRCUIT COURT OF THE
NINETEENTH JUDICIAL CIRCUIT IN AND FOR
ST. LUCIE COUNTY, FLORIDA

KIPP AHRENS,                                          CASE NO: 2017-CA-001619

      Plaintiff,

vs.

CITY OF FT. PIERCE, a Florida
Municipal Corporation, and
JUSTIN GUILLET, individually,

      Defendants.

_____/

NOTICE OF APPEARANCE AND
DESIGNATION OF ELECTRONIC MAIL ADDRESSES

      Eric J. Netcher, Esquire, of the law firm Dean, Ringers, Morgan & Lawton, P.A., Post

Office Box 2928, Orlando, FL 32802-2928, hereby files this Notice of Appearance on behalf of

Defendant CITY OF FORT PIERCE, without waiving and specifically reserving any rights he

may have to object to the sufficiency of process, service of process, proper venue or the

jurisdiction of this court, and requests that all pleadings, notices, and other papers filed in this

proceeding be served upon the undersigned attorneys.

      In compliance with Fla. R. Jud. Admin. 2.516, the undersigned designates the following

primary and secondary electronic mail addresses for this matter:

      Primary Electronic Mail Address:        Eric J. Netcher
                                      ENetcher@drml-law.com

      Secondary Electronic Mail Addresses:    Rhonda Carroll
                                        RhondaC@drml-law.com

      **I HEREBY CERTIFY** that on October 19, 2017, the foregoing was filed through the

Florida Courts E-Filing Portal which will send a notice of electronic filing to Gary Kollin, Esq.,

Gary Kollin, P.A., garykollin@garykollinlaw.com; pleadings@garykollinlaw.com, 1856 N. Nob

Hill Road, Suite 140, Fort Lauderdale, FL 33322.


                               _____/s/ Eric J. Netcher_____
                               ERIC J. NETCHER, ESQ.
                               Florida Bar No. 106530
                               Dean, Ringers, Morgan & Lawton, P.A.
                               Post Office Box 2928
                               Orlando, Florida 32802-2928
                               Tel: 407-422-4310    Fax: 407-648-0233
                               ENetcher@drml-law.com
                               RhondaC@drml-law.com
                               Attorneys for Defendant City of Fort Pierce

Filing # 63054632 E-Filed 10/21/2017 11:14:59 AM

## AFFIDAVIT OF SERVICE

| State of Florida | County of Saint Lucie | Circuit Court |

Case Number: 2017CA001619

Plaintiff:
**KIPP AHRENS**

vs.

Defendants:
**CITY OF FT PIERCE, A FLORIDA MUNICIPAL CORPORATION, AND JUSTIN GUILLETT, INDIVIDUALLY**

For:
GARY KOLLIN, PA
1856 N NOB HILL ROAD STE 140
FT LAUDERDALE, FL 33322

Received by Simmons Process Service LLC on the 13th day of October, 2017 at 11:38 am to be served on **MAYOR LINDA HUDSON OR OTHER DESIGNATED PERSON AUTHORIZED TO ACCEPT SERVICE CITY HALL, 100 N US 1, FORT PIERCE, FL 34950.**

I, Dory Aguero Mahony, being duly sworn, depose and say that on the 16th day of October, 2017 at 7:38 pm, I:

**SUBSTITUTE** served by delivering a true copy of the **SUMMONS, and AMENDED COMPLAINT, and EXHIBIT A1, and EXHIBIT A2** with the date and hour of service endorsed thereon by me, to: **JOHN BAILEY as CO RESIDENT/ HUSBAND** at the address of: **1713 FRANCIS COURT, FORT PIERCE, FL,** the within named person's usual place of **Abode,** who resides therein, who is fifteen (15) years of age or older and informed said person of the contents therein, in compliance with state statutes.

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good standing, in the judicial circuit in which the process was attempted.

Subscribed and Sworn to before me on the 16th day
of October, 2017 by the affiant who is personally
known to me.

_____
NOTARY PUBLIC

Dory Aguero Mahony
17-03

**Simmons Process Service LLC**
**5400 West Echo Pines Circle**
**Ft. Pierce, FL 34951**
**(772) 242-8920**

Our Job Serial Number: SMO-2017003532

KAREN C SIMMONS
Commission # FF 208470
Expires JUL 5 2019

Copyright © 1992-2017 Database Services, Inc - Process Server's Toolbox V7.1h

Filing # 64168071 E-Filed 11/14/2017 01:56:48 PM

**IN THE CIRCUIT COURT OF THE**
**NINETEENTH JUDICIAL CIRCUIT IN AND FOR**
**ST. LUCIE COUNTY, FLORIDA**

**KIPP AHRENS,**                                          **CASE NO: 2017-CA-001619**

      **Plaintiff,**

**vs.**

**CITY OF FT. PIERCE, a Florida**
**Municipal Corporation, and**
**JUSTIN GUILLETT, individually,**

      **Defendants.**

_____/

**NOTICE OF APPEARANCE AND**
**DESIGNATION OF ELECTRONIC MAIL ADDRESSES**

    Eric J. Netcher, Esquire, of the law firm Dean, Ringers, Morgan & Lawton, P.A., Post

Office Box 2928, Orlando, FL 32802-2928, hereby files this Notice of Appearance on behalf of

Defendant JUSTIN GULLETT[1], without waiving and specifically reserving any rights he may

have to object to the sufficiency of process, service of process, proper venue or the jurisdiction of

this court, and requests that all pleadings, notices, and other papers filed in this proceeding be

served upon the undersigned attorneys.

    In compliance with Fla. R. Jud. Admin. 2.516, the undersigned designates the following

primary and secondary electronic mail addresses for this matter:

        Primary Electronic Mail Address:        Eric J. Netcher
                                          ENetcher@drml-law.com

        Secondary Electronic Mail Addresses:    RhondaC@drml-law.com
                                            Rhonda Carroll

---

[1] Defendant Gullett's last name is incorrectly spelled "Guillett" by Plaintiff.

**I HEREBY CERTIFY** that on November 14, 2017, the foregoing was filed through the Florida Courts E-Filing Portal which will send a notice of electronic filing to Gary Kollin, Esq., 1856 N. Nob Hill Road, Suite 140, Fort Lauderdale, FL 33322

_____*/s/ Eric J. Netcher*_____
ERIC J. NETCHER, ESQ.
Florida Bar No. 106530
Dean, Ringers, Morgan & Lawton, P.A.
Post Office Box 2928
Orlando, Florida 32802-2928
Tel:  407-422-4310    Fax:  407-648-0233
ENetcher@drml-law.com
RhondaC@drml-law.com
Attorneys for Defendants

2